**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| AMERICAN FAMILY HOME<br>INSURANCE COMPANY<br><br>　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>ACADIA INSURANCE COMPANY,<br><br>　　　　　　　　Defendant. | Civil Action No.: |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, American Family Home Insurance Company ("Plaintiff" or "AFHIC"), by and through its counsel, files this Complaint for Declaratory Judgment against Defendant, Acadia Insurance Company ("Defendant" or "Acadia"). In support of this action, AFHIC states and alleges as follows:

**NATURE OF THE ACTION**

1.　　　This is an action for declaratory judgment commenced by AFHIC against Acadia that arises out of a dispute between the parties concerning Acadia's wrongful refusal to defend and potentially indemnify its additional insureds – Caritas Management, LLC ("Caritas") and Temple University - Of the Commonwealth System of Higher Education ("Temple University") – against the claims asserted in an underlying lawsuit pending in the Philadelphia Court of Common Pleas involving an alleged work-related injury asserted by an employee of B.V.F. Construction, Inc. ("BVF") under a commercial lines insurance policy Acadia issued to BVF affording commercial general liability and commercial umbrella liability coverages as required by a construction agreement entered into by Caritas as the contractor and BVF as the subcontractor.

2.      AFHIC seeks a declaration that (1) Acadia is obligated to defend and potentially indemnify Caritas and Temple University as additional insureds under the Acadia policy's Commercial General Liability coverage part on a primary, non-contributory basis; (2) the insurance coverage available under the Acadia policy's Commercial Umbrella Liability coverage part is triggered immediately upon the exhaustion of the limits applicable to the Commercial General Liability coverage part; and (3) Acadia has an obligation to reimburse AFHIC for all defenses costs it has incurred, and continues to incur, in the defense of Caritas and Temple University in the underlying action.

## THE PARTIES

3.      Plaintiff AFHIC is a corporation organized and existing under the laws of the State of Florida with its principal place of business located in Ohio.

4.      Defendant Acadia is a corporation organized and existing under the laws of the State of Iowa with its principal place of business located in Maine.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because the parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

6.      This Court has personal jurisdiction over AFHIC and Acadia as they are authorized to do business and regularly transact business in the State of Pennsylvania, and the respective insurance policies they issued that are the subject of this dispute were issued in Pennsylvania.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 insofar as the accident giving rise to the underlying claim, which is the subject of the declaratory relief sought,

2

occurred within this district and the subject insurance policies were issued in this district where Caritas and BVF are located.

8. An actual case and controversy of a justiciable nature exists between AFHIC and Acadia regarding their respective obligations and rights under the insurance policies they issued to Caritas and BVF, including the defense and indemnity obligations owed to Caritas and Temple University.

9. This controversy may be resolved by a judgment in this action without the necessity of other suits, or the joinder of any other parties.

## THE SUBCONTRACT BETWEEN CARITAS AND BVF

10. On or about May 11, 2023, Caritas, as the contractor, entered into a construction agreement with BVF, as the subcontractor, ("the Subcontract") to perform certain work in connection with the renovation of the bathrooms at Temple University's School of Dentistry ("the Project"). A copy of the Subcontract is attached as Exhibit "A."

11. The Subcontract provides that "[t]he Subcontractor [BVF] is bound to the Contractor [Caritas] by the same terms and conditions by which the Contractor [Caritas] is bound to the Owner [Temple University Health Systems]." *See* Ex. "A," ¶ 2.1.

12. Pursuant to the terms of the Subcontract, BVF agreed to procure certain liability insurance coverages for the benefit of, among others, Caritas and Temple University, and to name Caritas and Temple University as additional insureds under all the policies of insurance identified in the Subcontract except for BVF's Workers' Compensation insurance. *Id*. at Exbibit "A" to the Subcontract, Insurance Requirements, pp. 1 and 2.

13. In particular, the Subcontract required BVF to procure comprehensive general liability insurance coverage with minimum limits of $1 Million "Each occurrence" and "General

3

aggregate (per project)" of $1 Million, and umbrella/excess liability insurance coverage with a minimum limit of $5 Million. *Id*. at p. 2.

14.    The Subcontract further provides "[a]ll of Subcontractor's liability coverage shall be deemed primary insurance to any similar insurance Contractor or Owner may obtain for its own benefit, even if Contractor or Owner is solely negligent. All of Contractor's insurance policies or coverage are excess or secondary to any coverage provided to Contractor by Subcontractor's Insurance." *Id*. at p. 2-3.

15.    In addition, the Subcontract required BVF to obtain a Certificate of Liability Insurance stating that Caritas and Temple University "are named as additional insureds on a ***primary and non-contributory basis***" with respect to the general and umbrella liability coverages BVF was obligated by the Subcontract to procure for the benefit and protection of Caritas and Temple University. *Id*. at p. 3 (emphasis added).

**THE INSURANCE POLICIES**

*A.  The Acadia Commercial Lines Policy*

16.    Acadia issued BVF a Commercial Lines Policy – bearing policy number CPA 4359233-47 with an effective policy period from 12/31/2022 to 12/31/2023 ("the Acadia Policy") – which affords, among other coverages, commercial general liability coverage and umbrella liability coverage. A copy of the Acadia Policy is attached as Exhibit "B."

17.    According to the Acadia Policy's Declarations, the policy has Commercial General Liability Limits of $1 Million "Each Occurrence" and a "General Aggregate" limit of $2 Million, and a Commercial Liability Umbrella Limit of $5 Million "Each Occurrence" and "Aggregate Limit." *See* Ex. "B," Commercial General Liability Declarations and Commercial Liability Umbrella Declarations.

4

18.     The insuring agreement applicable to the Acadia Policy's Commercial General Liability Coverage Form states, in relevant part, as follows:

**SECTION I – COVERAGES**
**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

   \*\*\*

   b. This insurance applies to "bodily injury" and "property damage" only if:

      **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      **(2)** The "bodily injury" or "property damage" occurs during the policy period ….

*See* Ex. "B" at Commercial General Liability Coverage Form.

19.     The Acadia Policy contains an endorsement applicable to the policy's Commercial General Liability coverage part recognizing as additional insureds certain persons or organizations where, as here, BVF has agreed in writing to add those entities as additional insureds to the policy that provides as follows:

**ADDITIONAL INSURED – OWNERS, LESSEES OR**
**CONTRACTORS – AUTOMATIC STATUS FOR OTHER**
**PARTIES WHEN REQUIRED IN WRITTEN**
**CONSTRUCTION AGREEMENT**

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A. Section II – Who Is An Insured** is amended to include as an additional insured:

1. Any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy; and

5

**2.** Any other person or organization you are required to add as an additional insured underthe contract or agreement described in Paragraph **1.** above.

Such person(s) or organization(s) is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**a.** Your acts or omissions; or
**b.** The acts or omissions of those acting on your behalf; in the performance of your ongoing operations for the additional insured described in Paragraph **1.** or **2.** above.

***

A person's or organization's status as an additional insured under this endorsement ends when your operations for the person or organization described in Paragraph **1.** above are completed.

*See* Ex. "B," Additional Insured – Owners, Lessees or Contractors – Automatic Status for Other Parties When Required in Written Construction Agreement Endorsement.

20.      Consistent with the requirement in the Subcontract obligating BVF to obtain insurance coverage on a "primary and non-contributory" basis for the protection of Caritas and Temple University as additional insureds in connection with the Project, the Acadia Policy also contains an endorsement that states:

**PRIMARY AND NONCONTRIBUTORY –
OTHER INSURANCE CONDITION
(ADDITIONAL INSURED)**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **(v)** is added to Paragraph **(1)(a)** of Paragraph **b. Excess Insurance** under Paragraph **4. Other Insurance** of **Section IV – Commercial General Liability Conditions**, as follows:

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(v)** That is available to any person or organization who has been added as an additional insured to this policy by endorsement.
However, with respect to an additional insured added by endorsement for liability caused, in whole or in part:

6

    **1.** By your acts or omissions, or the acts or omissions of those acting on your behalf:

        **(a)** In the performance of your ongoing operations; or
        **(b)** In connection with your premises;

    **2.** By your maintenance, operation or use of equipment leased to you by such person or organization; or

    **3.** By "your work" performed for that additional insured and included in the "products-completed operations hazard";

    this insurance shall be primary to and will not seek contribution from the additional insured's own insurance if you and such additional insured have agreed prior to loss in a written contract or written agreement, in effect during this policy period, that this insurance be primary and noncontributory as respects liability described in Subparagraph **(1)(a)(v)1., (1)(a)(v)2.** or **(1)(a)(v)3.** above. However, this insurance, in all cases, is excess over any other liability insurance available to the additional insured to which such person or organization has been added as an additional insured.

*See* Ex. "B," Primary and Non-Contributory – Other Insurance Condition (Additional Insured) Endorsement.

21.    The insuring agreement applicable to the Acadia Policy's Commercial Liability Umbrella Coverage Form states, in relevant part, as follows:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

  **1. Insuring Agreement**

    **a.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted….

*See* Ex. "B," Commercial Liability Umbrella Coverage Form.

22.     The Acadia Policy Umbrella Coverage Part defines "underlying insurance" to mean "any policies of insurance listed in the Declarations under the Schedule of "underlying insurance," and the Schedule of underlying insurance applicable to the Commercial Umbrella Liability coverage part, in turn, identifies the Commercial General Liability coverage afforded under the Acadia Policy (i.e., Policy Number 4359233) as underlying insurance. *See* Ex. "B," Commercial Umbrella Coverage Form, Declarations, Schedule of Underlying Insurance, and Definition No. 24.

23.     Section II of the Acadia Policy's Umbrella Coverage Part identifies the persons or organizations who qualify as insureds under the Acadia Policy's umbrella coverage, and states, in pertinent part, that "[a]ny additional insured under any policy of 'underlying insurance' will automatically be an insured under this insurance." *See* Ex. "B," Umbrella Coverage Form, Section II (3).

### B. The AFHIC Commercial General Liability Policy

24.     AFHIC issued a Commercial General Liability Policy to Caritas  bearing policy number 88A5GL0001163-00, with an effective policy period from 02/28/2023 to 02/28/2024 ("the AFHIC Policy"). A copy of the AFHIC Policy is attached as Exhibit "C."

25.     According to the AFHIC Policy's Declarations, the policy has limits of $1 Million "Each Occurrence" and a "General Aggregate Limit" limit of $2 Million. *See* Ex. "C," Commercial General Liability Coverage Form Declarations.

26.     The AFHIC Policy contains an endorsement recognizing as additional insureds certain persons or organizations – where required by written contract per the Schedule in the endorsement – that provides, in relevant part, as follows

**ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

    **A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

    **1.** Your acts or omissions; or

    **2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

***

*See* Ex. "C," Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization.

<strong><u>THE UNDERLYING LITIGATION</u></strong>

27.    The litigation styled *Joseph Anderson v. Caritas Management, LLC d/b/a Caritas Construction and Temple University of the Commonwealth System of Higher Education, et al.*, Philadelphia County Court of Common Pleas, February Term 2024, NO. 02267 ("the Underlying Action") arises out of an alleged workplace accident which occurred on September 21, 2023, at the site of the Project in the course of BVF's performance of its operations under the Subcontract. A copy of the Amended Complaint is attached as Ex. "D."

28.    According to the allegations in the Underlying Action, "[a]t all relevant times, Defendant Caritas Construction was acting by and through its agents, servants and/or employees

9

who were acting within the course and scope of their agency, service and/or employment with Defendant Caritas Construction." *Id*. at ¶ 3.

29.     The complaint in the Underlying Action also alleges that "[a]t all relevant times, Defendant Temple University was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency, service and/or employment with Defendant Temple University." *Id*. at ¶ 6.

30.     Plaintiff Anderson further alleges that on September 21, 2023, he was working in the regular course and scope of his employment retrofitting window pockets when he was ejected from the ladder he was working atop due to an unexpected shift in the floor protection materials beneath the ladder causing him to fall to the floor resulting in permanent and catastrophic injuries. *See* Ex. "D" at  ¶¶ 40-44.

31.     In Counts I and II of his complaint, Anderson asserts nearly identical causes of action for negligence against defendants Caritas and Temple University in the Underlying Action. *Id*. at ¶¶ 55-99.

32.     According to Mr. Anderson, "Defendant Caritas Construction was the general contractor and/or construction manager at the Project and was responsible for the hiring of the contractors performing the work at the Project, and the inspection and supervision of the work performed at the Project, including but not limited to the safety of workers on the Project." *Id*. at ¶ 56.

33.     Anderson similarly alleges that "Defendant Temple University was the owner, developer, and/or construction manager of the Project, and was responsible for the hiring of the contractors performing the work at the Project, and the inspection and supervision of the work

performed at the Project, including but not limited to the safety of workers at the Project." *Id*. at ¶ 78.

34.    Plaintiff Anderson further avers that his alleged injuries, damages and losses were caused by the negligence, carelessness, and other liability producing conduct of Caritas and Temple University – "acting by and through [their] agents, servants, workers and/or employees" – and identifies the following alleged acts or omissions on the part of Caritas and Temple University, among others, as the cause of his alleged injuries and damages:

- o   failing to adequately ensure the safety of the worksite;

- o   failing to properly train and supervise its own employees and contractors' and subcontractors' employees;

- o   failing to hire competent employees, safety inspectors, contractors and subcontractors;

- o   failing to hire competent subcontractors;

- o   failing to supervise or monitor the work being performed;

- o   to the extent that its agents, servants, employees were negligent, each Defendant, as employer, is vicariously liable for each act of negligence of its employee.

*See* Ex. "D" at ¶¶ 74 (a)-(ee); 97 (a)-(ee).

35.    BVF, Mr. Anderson's employer at all relevant times, is not named a defendant in the Underlying Action.

36.    Under Pennsylvania law, the Pennsylvania Workers' Compensation Act (77 P.S. § 481) is an injured employee's exclusive remedy against his or her employer for a work-related injury, and an employee is barred from suing his or her employer in tort for an injury covered under the statute.

37.    Pursuant to the terms of the Subcontract and the provisions in the Acadia Policy recognizing certain persons and organizations as additional insureds where, as here, BVF has

agreed in a written contract to add them as such, Caritas and Temple University tendered their defenses against the claims asserted against them by Jospeh Anderson in the Underlying Action to Acadia.

38.    By letters dated August 22, 2024, Acadia acknowledged their tenders and denied the requests for a defense by Caritas and Temple University on the ground that there is no coverage available to either "because the Amended Complaint does not contain a single allegation suggesting that the Plaintiff's injury was caused by, in any way, by the acts or omissions of B.V.F. or any individual or entity acting on B.V.F.'s behalf." *See* August 22, 2024, Letters from Ward A. Rivers, Esq. to J. Mark Pecci II, Esq. and Lori C. Miller, Esq. attached as Exs. "E" and "F" respectively at 8.

39.    As a direct result of Acadia's improper refusal to assume the defense of Caritas and Temple University against the claims asserted by BVF's employee, Joseph Anderson, in the Underlying Action, AFHIC has agreed to provide them with a defense.

40.    As a direct result of Acadia's improper refusal to assume the defense of Caritas and Temple University against the claims asserted by BVF's employee, Joseph Anderson, in the Underlying Action, AFHIC has incurred significant costs, expenses, and legal fees in connection with their defenses in the Underlying Action.

41.    An actual case or controversy has arisen with respect to the duties and obligations of Acadia relative to the defense of Caritas and Temple University in the Underlying Action, as well as its potential indemnification obligation in favor of Caritas and Temple University in the event of an adverse judgment or settlement of the Underlying Action.

## COUNT I – DECLARATORY JUDGMENT
### (*Duty to Defend Caritas and Temple University*)

42.    Plaintiff AFHIC incorporates by reference the foregoing allegations in the Complaint as if the same were set forth herein at length.

43.    The Acadia Policy provides commercial general liability insurance coverage which obligates Acadia to defend and indemnify a qualifying "insured" against a claim for "bodily injury" caused by an "occurrence" that takes place during the policy period.

44.    The claims asserted by plaintiff in the Underlying Action against Caritas and Temple University allege liability for "bodily injury" covered by the Acadia Policy.

45.    The Acadia Policy includes as "insureds" those persons or organizations BVF has agreed in a written contract to include as an additional insured under the policy.

46.    The Acadia Policy obligates Acadia to defend its additional insured ***not*** whenever a tort claim is asserted against its named insured (BVF), but rather, whenever the allegations in the underlying pleading give rise to the possibility that a "bodily injury" was caused, in part, by the acts or omissions of BVF – or someone acting on its behalf – in the performance of BVF's ongoing operations on behalf of the additional insured.

47.    BVF was required to name Caritas and Temple University as additional insureds under the Subcontract, and Caritas and Temple University qualify as such under the applicable additional insured endorsement in the Acadia Policy's Commercial General Liability Coverage Part.

48.    Moreover, under well-settled precedent in this Circuit, allegations of the nature and type asserted by Joseph Anderson in the Underlying Action cited above have been held to raise the possibility that the injuries and damages alleged by the underlying plaintiff were potentially caused, at least in part, by the acts or omissions of the unnamed employer of the injured employee,

or someone acting on the employer's behalf, such that the liability insurer of the employer has an obligation to defend its additional insured(s).

49.    The Subcontract required BVF to procure additional insured coverage for the benefit and protection of Caritas and Temple University on a primary and non-contributory basis and Acadia, in turn, agreed that its insurance "shall be primary to and will not seek contribution from the additional insured's own insurance if you and such additional insured have agreed prior to loss in a written contract or written agreement, in effect during this policy period, that this insurance be primary and noncontributory."

50.    The Acadia Policy's Commercial General Liability coverage part affords coverage to Caritas and Temple University for the claims asserted against them in the Underlying Action on a primary and non-contributory basis such that Acadia has a duty to defend and potentially indemnify Caritas and Temple.

51.    All conditions precedent for the trigger of a primary defense obligation in favor of Caritas and Temple University under the Acadia Policy's Commercial General Liability coverage part have been satisfied.

WHEREFORE, American Family Home Insurance Company respectfully requests an order declaring that: (1) Caritas and Temple University qualify as additional insureds under the Acadia Policy with respect to the claims asserted against them in the Underlying Action; (2) the allegations in the Underlying Action triggered Acadia's duty to defend Caritas and Temple University; and (3) Acadia's present obligation to defend and potential duty to indemnify Caritas for the claims asserted against them in the Underlying Action applies on a primary, non-contributory basis.

## COUNT II – DECLARATORY JUDGMENT
### (*Recovery of Defense Costs Incurred*)

52.    Plaintiff AFHIC incorporates by reference the foregoing allegations in the Complaint as if the same were set forth herein at length.

53.    The Subcontract required BVF to obtain insurance coverage for the protection of Caritas and Temple University in connection with injuries and liabilities relating to BVF's operations at the Project on a primary and non-contributory basis.

54.    By endorsement, the Acadia Policy provides additional insureds with coverage on a primary, non-contributory basis where, as here, BVF and an additional insured have agreed prior to loss in a written contract or written agreement, in effect during this policy period, that the insurance afforded under the Acadia Policy would be primary and noncontributory

55.    The AFHIC Policy, in turn, provides primary coverage, if at all, excess to the Acadia Policy's Commercial General Liability coverage for the claims asserted against Caritas and Temple University in the Underlying Action.

56.    Despite receiving timely tenders from Caritas and Temple University, Acadia refused to defend them against the claims asserted in the Underlying Action.

57.    As a result of Acadia's improper refusal to provide its additional insureds with a defense in the Underlying Action, AFHIC has been compelled to effectively drop down and provide a defense to Caritas and Temple University in the Underlying Action.

58.    AFHIC has provided Caritas and Temple University with a defense in the Underlying Action.

59.    AFHIC has expended and continues to expend significant amounts of money to defend Caritas and Temple University in the Underlying Action, all of which should have been borne by Acadia.

60.    To the extent that it has expended significant amounts of money to defend Caritas and Temple University in the Underlying Action, AFHIC is a legal and/or equitable subrogee of Caritas and Temple University.

61.    Alternatively, AFHIC has a direct cause of action against Acadia under the doctrine of equitable contribution.

62.    Acadia is obligated to reimburse AFHIC for all defense costs and expenses incurred by AFHIC in the defense of Caritas and Temple University in the Underlying Action.

**WHEREFORE**, American Family Home Insurance Company respectfully requests an order declaring that Acadia Insurance Company has an obligation to reimburse American Family Home Insurance Company for all costs and expenses incurred by American Family Home Insurance Company in the defense of Caritas and Temple University in the Underlying Action.

### COUNT III – DECLARATORY JUDGMENT
#### (*Trigger of Coverage under the Acadia Policy's Umbrella Liability Coverage Part*)

63.    Plaintiff AFHIC incorporates by reference the foregoing allegations in the Complaint as if the same were set forth herein at length.

64.    Caritas and Temple University qualify as additional insureds under the Acadia Policy's Commercial General Liability coverage part with respect to the claims asserted against them in the Underlying Action.

65.    Section II of the Acadia Policy's Umbrella Coverage Part identifies the persons or organizations who qualify as insureds under the Acadia Policy's umbrella coverage, and states, in pertinent part, that "[a]ny additional insured under any policy of 'underlying insurance' will automatically be an insured under this insurance." *See* Ex. "B," Umbrella Coverage Form, Section II (3).

16

66.     The Acadia Policy Umbrella Coverage Part defines "underlying insurance" to mean "any policies of insurance listed in the Declarations under the Schedule of "underlying insurance," and the Schedule of underlying insurance applicable to the Commercial Umbrella Liability coverage part, in turn, identifies the Commercial General Liability coverage afforded under the Acadia Policy (i.e., Policy Number 4359233) as underlying insurance. *See* Ex. "B," Commercial Umbrella Coverage Form, Declarations, Schedule of Underlying Insurance, and Definition No. 24.

67.     Therefore, Caritas and Temple University qualify as additional insureds under the Acadia Policy's Umbrella Liability coverage part for purposes of the claims asserted against them in the Underlying Action.

68.     The insuring agreement applicable to the Acadia Policy's Commercial Liability Umbrella Coverage Form states, in relevant part, as follows:

**2. Insuring Agreement**

**a.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted….

*See* Ex. "B," Commercial Liability Umbrella Coverage Form.

69.     Immediately upon the exhaustion of the limits appliable to the Acadia Policy's Commercial General Liability coverage part, the coverage available to Caritas and Temple University under the Acadia Policy's Umbrella Liability coverage part is triggered, and Acadia has a duty to defend and potentially indemnify Caritas with respect to the claims asserted against them in the Underlying Action.

**WHEREFORE**, American Family Home Insurance Company respectfully requests an order declaring that once the limits applicable to the Acadia Insurance Company's Commercial General Liability coverage part are exhausted, the coverage available under the policy's Umbrella Liability coverage part is immediately triggered and Acadia has a duty to defend Caritas and Temple University and potentially indemnify Caritas with respect to the claims asserted against them in the Underlying Action.

**COUNT IV – DECLARATORY JUDGMENT**
**(*Duty to Indemnify Caritas*)[1]**

70.     Plaintiff AFHIC incorporates by reference the foregoing allegations in the Complaint as if the same were set forth herein at length.

71.     The Acadia Policy provides commercial general liability insurance coverage which obligates Acadia to defend and indemnify a qualifying "insured" against a claim for "bodily injury" caused by an "occurrence" that takes place during the policy period.

72.     The claims asserted by plaintiff in the Underlying Action against Caritas and Temple University allege liability for "bodily injury" covered by the Acadia Policy.

73.     The Acadia Policy includes as "insureds" those persons or organizations BVF has agreed in a written contract to include as an additional insured under the policy.

74.     The Acadia Policy obligates Acadia to indemnify an additional insured whenever an additional insured incurs liability for "bodily injury" that was "caused, in whole or in part, by [BVF's] acts or omissions or the acts or omissions of those acting on [BVF's] behalf in the performance of BVF's ongoing operations" on behalf of the additional insured.

---

[1] In the Underlying Action, an order of Stipulation and Dismissal was entered on April 29, 2026, dismissing all claims asserted against Temple University with prejudice. As such, this count applies only to the claims asserted by plaintiff Anderson against Caritas in the Underlying Action.

75. BVF was required to name Caritas and Temple University as additional insureds under the Subcontract, and Caritas and Temple University qualify as such under the applicable additional insured endorsement in the Acadia Policy's Commercial General Liability Coverage Part.

76. Accordingly, to the extent that the jury in the Underlying Action finds that some act or omission by BVF – or someone acting on BVF's behalf – was ***at least 1% responsible*** for causing the injuries and damages alleged by plaintiff in the Underlying Action, Acadia has a duty under its policy to indemnify Caritas for any liability that may be allocated to it at trial for underlying plaintiff's alleged injuries and damages on a primary and non-contributory basis.

**WHEREFORE**, American Family Home Insurance Company respectfully requests an order declaring that: (1) Caritas and Temple University qualify as additional insureds under the Acadia Policy with respect to the claims asserted against them in the Underlying Action; (2) the allegations in the Underlying Action triggered Acadia's duty to defend Caritas and Temple University; and (3) to the extent that the jury determines that some act of omission by BVF or those acting on its behalf was at least 1% liable for causing the injuries and damages alleged by the plaintiff in the Underlying Action, Acadia has a duty under its policy to indemnify Caritas for any liability it may incur in the Underlying Action for plaintiff's alleged injuries and damages.

**<u>PRAYER FOR RELIEF</u>**

**WHEREFORE**, American Family Home Insurance Company respectfully requests that this Court enter judgment in its favor and against Acadia Insurance Company declaring that:

(1) Caritas and Temple University qualify as additional insureds under the Acadia Policy's Commercial General Liability and Umbrella Liability coverage parts with respect to the claims asserted against them in the Underlying Action;

(2) the coverage available to Caritas and Temple University under the Acadia Policy's Commercial General Liability coverage part applies on a primary, non-contributory basis with respect to the claims asserted against them in the Underlying Action;

(3) any coverage available to Caritas and Temple University under the AFHIC Policy for the claims asserted against them in the Underlying Action is excess of the coverage under the Acadia Policy's Commercial General Liability coverage part;

(4) the coverage available to Caritas and Temple University under the Acadia Policy's Umbrella Liability coverage part for the claims asserted against them in the Underlying Action is immediately triggered upon the exhaustion of the limits applicable to the Acadia Policy's Commercial General Liability coverage part such that Acadia has a duty to defend Caritas and Temple University and potentially indemnify Caritas with respect to the claims asserted against them in the above-referenced lawsuit; and

(5) to the extent that the jury in the Underlying Action finds that some act or omission by BVF, or someone acting on BVF's behalf, in the performance of its operations was at least 1% responsible for causing the injuries and damages alleged by the underlying plaintiff, Acadia is obligated under its policy to indemnify Caritas as additional insureds for any liability it may incur in the Underlying Action.

Dated: May 5, 2026

Respectfully submitted,

BY:  /s/ Michael J. Smith
     Michael J. Smith, Esquire
     Michael Murphy, Esquire
     STEWART | SMITH
     300 Four Falls Corporate Center, Suite 670
     300 Conshohocken State Road
     West Conshohocken, PA 19428
     Tel: (484) 344-5296
     Fax: (484) 534-9470
     msmith@stewartsmithlaw.com
     mmurphy@stewartsmithlaw.com

     *Attorneys for Plaintiff*
     *American Family Home Insurance Company*

21